# Richmond

MARY W. FRAZIER, TRADING UNDER THE FIRM NAME AND STYLE OF CITY CAB COMPANY v. HAROLD KEITH CONNER.

November 27, 1950.

Record No. 3697.

Present, Hudgins, C. J., and Gregory, Eggleston, Spratley, Buchanan and Miller, JJ.

The opinion states the case.

*Francis M. Hoge* and *Ralph R. Repass*, for the plaintiff in error.

*George P. Young, Campbell & Campbell* and *R. Crockett Gwyn, Jr.*, for the defendant in error.

GREGORY, J., delivered the opinion of the court.

Mary W. Frazier, trading under the name of City Cab Company, operates a taxicab business in the town of Marion. There was a collision between one of her taxicabs and a Dodge car operated by Harold Keith Conner. She sued Conner for damages to the taxicab and for the loss of its use. The jury found against her and the court approved that finding.

The collision occurred on September 30, 1948, at approximately 9:45 p. m., at the intersection of U. S. Highway No. 11 and secondary State road No. 659, some two miles west of Marion. The part of No. 659 leading northward from No. 11 was formerly a part of No. 11, but changed by the relocation of No. 11 at that point. No. 11 runs

westwardly from Marion, goes to the top of a small hill 1,000 feet east of the intersection, then proceeds downgrade 400 feet, and then on a slight upgrade 600 feet to the intersection with No. 659. From the north No. 659, which is also a hard-surface road, crosses the Norfolk & Western railroad tracks at grade, some 40 to 60 feet northwest of the point where it intersects with No. 11, and it enters No. 11 on an inverted "Y", that is, at the intersection it spreads out about 30 feet on the shoulder of No. 11, then crosses No. 11 and continues southward. There is an Amoco service station on the south side of No. 11 adjoining the west side of No. 659. U. S. Highway No. 11 is an arterial highway and there is a stop sign on No. 659 for traffic entering No. 11. At the intersection, on No. 11, there is a double white line in the center. The north line is solid for traffic going west, and the south line is broken for traffic going east. The hard surface of No. 11 is approximately 20 feet wide with gravel shoulders on each side.

The defendant, Conner, was driving a 1936 Dodge sedan which belonged to his mother. He had as a companion, Miss Betty June Mason, a school teacher. She was sitting on the front seat with him. Some 60 feet before he reached the intersection Conner saw the reflection from the headlights of the two taxicabs a thousand feet east of the intersection. One Catron was driving a 1947 Kaiser sedan, and immediately behind him one Bane C. Wright was driving a 1947 Plymouth, both taxicabs, and owned by the plaintiff. They were answering a call beyond the point of the collision. There is a serious conflict in the evidence as to how the collision occurred, and if the jury were properly instructed we would have to conclude that they accepted the version of the defendant for they found a verdict in his favor which the court refused to disturb.

The defendant stated that after he crossed the railroad crossing he saw the light beams of the taxicabs approaching, but could not at that time see the headlights. A little later he did see the headlights of the two taxicabs being driven

close together. He also stated that he stopped at the intersection, looked in the other direction, saw the way was clear, and pulled on across the road, shifting into second gear. He said he thought he had time to enter No. 11 ahead of the cabs and get in his eastbound lane. Then, according to his testimony, one of the taxicabs passed him and the second cab, following close behind, darted out as if to pass the first cab, and when this occurred the second cab was in his (defendant's) lane of travel, which was the south lane. After he had gone some 60 feet past the intersection, the right front end of the Kaiser taxicab, which was the one engaged in passing the first taxi, collided with the left front end of his car. On this evidence the jury could have found a verdict for the defendant. However, the plaintiff, relying upon the testimony of the driver of the Kaiser taxicab, has a different version. Catron, the driver of that cab, stated that he was driving at the lawful speed of 50 miles an hour as he approached the intersection, that he saw the defendant's car standing still close to the intersection, that he thought it would remain standing there until he passed inasmuch as he was upon an arterial highway and the defendant was confronted with a stop sign. But instead of remaining in a standing position until he could go through the intersection, the defendant drove his Dodge sedan out too close in front of the taxicab, and in order to prevent hitting the Dodge broadside, he turned his car sharply to the left and they collided about the middle of the intersection. He stated that he did not think Conner would drive his car out into the highway in front of him and that the only thing he could do to miss him was to swing sharply to the left, because at the time Conner pulled out in front of him he was only 50 yards away and running at 50 miles per hour.

If the jury had believed the testimony of Catron, and they had been properly instructed, a verdict in favor of the plaintiff would have been sustained by the evidence.

Negligence and contributory negligence were

plainly for the jury. Instruction No. 1, offered by the plaintiff and refused by the court, was a finding instruction and omitted any reference to any contributory negligence of the driver of the plaintiff's car. If this instruction had been qualified to embrace the defendant's theory that the plaintiff's driver was guilty of contributory negligence we think it would have been free from objection, but as written, it was improper.

Instruction No. 2, offered by the plaintiff and refused by the court, should have been granted. It presented to the jury the sudden emergency doctrine which was a theory of the plaintiff. The alleged emergency, as testified to by the plaintiff's driver, if believed by the jury, would have explained why his taxicab was in the southern traffic lane across the double white line. He said he got there because the defendant, after stopping at the intersection on secondary road No. 659, started up and pulled out immediately in front of him (the plaintiff's driver) when he was only 50 yards away, and in order to prevent a broadside collision he did the best he could under the circumstances and pulled to his left over the double white line. There was evidence that the point of collision was at or near the double white line in the center of No. 11. This is disclosed by the dry mud and dust which fell to the road at that point as a result of the force of the impact. The plaintiff was entitled to an instruction on this feature of the case and it was reversible error to refuse it. Whether the plaintiff's driver negligently brought on the emergency was for the jury. A jury could reasonably have found that when the defendant drove his car out into the highway in front of the plaintiff's cab, which was only 150 feet away and going at 50 miles an hour, it created an emergency that excused plaintiff's driver for crossing to his left over the double white line.

In *Otey* v. *Blessing*, 170 Va. 542, 197 S. E. 409, we said: "It is natural to assume that one on a main highway rapidly approaching a crossing would take it for granted

that another on a secondary road, likewise approaching it, but who had stopped, did so with the intention of giving arterial traffic the right of way." This statement of the law was reiterated in *Barnes* v. *Mabry*, 186 Va. 243, 42 S. E. (2d) 304.

In the *Otey Case* which was quite similar to the one at bar, Otey approached Highway No. 11 from a secondary road—No. 11 highway at that point was an arterial highway. He stopped his car just before entering No. 11 and then pulled out in front of the Blessing car which was proceeding westwardly. Blessing then tried to avoid a collision by trying to cut to the left in the hope that he might in that manner safely pass in front of the Otey car. In this he failed, and the collision occurred. Mr. Justice Holt, in delivering the opinion of the court, at page 549, had this to say: "We may concede for the sake of argument that Blessing failed to act with the best of judgment. When Otey started to cross the highway in front of him, he cut to the left in the hope that he might in that manner safely pass in front of the Packard car. When he found that this could not be done, he undertook to turn back and to pass it to the right. He failed. The emergency which confronted him was due to Otey's heedlessness, and for it he was in no wise responsible.

" 'It is true, as contended, that men confronted by sudden emergencies are not required to follow the safest course. The doctrine of error *in extremis* is a humane one and has been frequently applied by this court, but it cannot be invoked by one who is at fault and whose negligence or misconduct brings about the peril in which he is placed.' *Virginia Elec., etc., Co.* v. *Ford*, 166 Va. 619, 186 S. E. 84, 86; *Lavenstein* v. *Maile*, 146 Va. 789, 132 S. E. 844; *Virginia, etc., Ry. Co.* v. *Hill*, 119 Va. 837, 89 S. E. 895; *Real Estate Trust, etc., Co.* v. *Gwyn*, 113 Va. 337, 74 S. E. 208."

The court of its own motion gave instruction 1-A and it was objected to by both sides. We think that the last paragraph of the instruction was erroneous. It in-

troduced into the case for the first time the question of unavoidable accident. This question had not been raised by either side up to this point. There was no room in the case for any theory of unavoidable accident. The evidence plainly shows that the case was one of the negligence of the plaintiff, the negligence of the defendant, or the concurring negligence of both of them which caused the collision. There is no question of the doctrine of the last clear chance.

Plaintiff's instruction No. 4, as offered, was refused by the court. It provided that if the jury found in favor of the plaintiff, in fixing her damages they should take into account the actual cost of repair to her automobile, and the value of the loss of use thereof to the plaintiff as a result of the wreck. This instruction was objected to by counsel for the defendant and instruction No. 4-A was given in its place. That instruction told the jury that if they found for the plaintiff she was entitled to recover her damages, and in fixing such damages the jury should take into account the actual cost of repair to her automobile. This latter instruction was not objected to by the plaintiff and was substituted in place of the one offered by her. Under these circumstances any objection she had to the court's refusal to give instruction No. 4, as prepared by her counsel, was waived.

For the errors indicated, in refusing plaintiff's instruction No. 2, and the error pointed out in instruction 1-A which was given by the court on its own motion, the judgment of the court is reversed, the verdict of the jury set aside, and the case remanded for a new trial.

*Reversed and remanded.*