The **NORTH RIVER INSURANCE COMPANY**, Plaintiff,

v.

**Joseph Henry DAVIS**, Defendant.

No. 64–C–22–H.

United States District Court
W. D. Virginia,
Harrisonburg Division.

Sept. 7, 1967.

148

Rufus G. Coldwell, Jr., Browder, Russell, Little & Morris, Richmond, Va., for plaintiff.

J. Sloan Kuykendall, James L. Berry, Kuykendall & Whiting, Winchester, Va., for defendant.

## OPINION AND JUDGMENT

MICHIE, District Judge.

Plaintiff, North River Insurance Company, brought this diversity action for contribution pursuant to Virginia Code § 8–627 against Joseph Henry Davis alleging that Davis was a joint tortfeasor with plaintiff's insured, Glen E. Schwartz, and that therefore the plaintiff is entitled to have him bear equally with it sums which plaintiff paid in settlement of actions in the Virginia State Courts on behalf of its insured, Glen E. Schwartz.

On the night of February 16, 1960, on U. S. Route 11 north of Winchester in Frederick County, Joseph Henry Davis was proceeding north in the right hand lane of the three-lane highway. Riding with him in his father's 1953 Chevrolet were Mr. Bart Conrath and Miss Sarah Slonaker (now Mrs. Sarah Slonaker Bias). The night was clear and the road surface was dry but, as it had recently snowed and was very cold, snow was piled in banks two or three feet high along the sides of the highway. For about a mile the defendant Davis had been driving behind a Mason-Dixon tractor-trailer proceeding at the rate of approximately 45 miles per hour. Considering passing the tractor-trailer, Davis while approximately 100 to 150 feet behind edged over toward or into the center of the three lanes to see if it was safe to pass. He saw four headlights coming toward him, indicating two cars abreast. Almost im-

mediately, the car in the center lane, a black Buick driven by Glen E. Schwartz, cut toward its right side of the road. Appearing to have struck the front bumper of the car it was passing, a light-colored Pontiac, it ricocheted off the hardpacked snowbank, bounded back across the road and smashed into the front of the tractor-trailer. The debris of the black Buick which, after having struck the cab of the tractor-trailer, was in turn struck by the Pontiac, then collided with the Davis vehicle. Davis' car came to rest a little to the rear of the tractor-trailer and partially in the outer lane. Glen Schwartz and the driver of the truck were killed. The driver of the Pontiac, Clarence Adams, was severely injured. Davis and the other two occupants of his car received only slight injuries.

The parties stipulated that, if the defendant was liable at all, he was liable only in the amount of $11,840.59 representing one-half of the amount paid out by North River in settlement. The case was tried to a jury under the theory that Davis negligently pulled into the center lane to pass the tractor-trailer while the vehicle driven by Glen Schwartz was already there in the act of passing the Pontiac. The jury returned a verdict in favor of the plaintiff for the amount stipulated.

Defendant, renewing an earlier motion for a directed verdict, moved that the verdict be set aside and judgment entered in his favor. Attempting to impale the plaintiff on the horns of a dilemma, the defendant argues that under the circumstances of this accident it was legally impossible for both Schwartz and Davis to have been negligent. Before considering defendant's arguments, which are best summarized in the form of three legal syllogisms, it is well to take a look at the legal bases of a contribution action.

 While no right of contribution among wrongdoers existed at common law, that right is now permitted by § 8–627 of the Code of Virginia of 1950 and may be enforced when the wrong is a mere act of negligence and involves no moral turpitude. The wrongdoer, of course, must be a joint tortfeasor; that is, the concurring negligence of both parties must have contributed to bring about the injury sustained by a third. Also, as between the wrongdoers, degrees of negligence are not to be considered. A third person suing two persons whose concurrent negligence contributed to his injury may recover from them either jointly or severally. Between two persons found to be jointly liable, the law does not attempt to apportion negligence but allows each to be responsible for one-half of the amount paid in damages so long as the negligence of each contributed in any degree toward the ultimate result.

 One qualification imposed by the law is that the victim of the tort must have an exercisable right of action against the party from whom contribution is sought. Furthermore, the right to contribution arises only when one of the joint tortfeasors has paid a claim for which the other wrongdoer is also liable. The payment need not be the result of a judgment for the right of contribution will lie although no previous judgment determining the issues of negligence and contributory negligence has been obtained. It is sufficient in Virginia that the tortfeasor seeking contribution has paid out amounts in compromise settlement. The burden of showing that the settlement was not undertaken in good faith or that it was unreasonable or excessive is upon the person against whom the contribution is sought.

 It must be remembered that the burden is upon the party seeking contribution to establish the concurring negligence of *both* parties. The defendant may, of course, introduce evidence to show that he was not negligent or that his negligence was not the proximate cause of the injuries. He may also defeat contribution by showing that the one seeking contribution was not negligent or that there was no concurrence of negligence. The preceding discussion is based upon the following cases decided

by the Virginia Supreme Court of Appeals: Bartlett v. Recapping, Inc., 207 Va. 789 (1967); Maroulis v. Elliott, 207 Va. 503 (1967); Nationwide Mutual v. Jewel Tea Company, 202 Va. 527, 118 S.E.2d 646 (1961); Norfolk Southern Railway v. Gretakis, 162 Va. 597, 174 S.E. 841 (1934).

Keeping in mind that the North River Insurance Company, since its right to contribution stems from a compromise settlement must show both that its insured was negligent and that the defendant Davis was negligent and also that the negligence of both concurred to cause the accident, I now turn to a consideration of the defendant's arguments.

Since the plaintiff's case with respect to the alleged negligence of Davis was either that he undertook to pass the tractor-trailer while an oncoming car was occupying the center lane or, that if he was merely pulling out to see if he could pass, he did so negligently in that he crossed over the line dividing the right from the center line such a distance as to create a dangerous condition, the defendant introduced evidence to show that Davis did not attempt to pass the tractor-trailer but that he merely went out to look and that in going out to look he did so reasonably. Thus, the defendant argues, the facts establish that he pulled out a reasonable distance and therefore was not negligent. Since his action was reasonable and therefore did not create a dangerous condition, the defendant reasons, Schwartz's reaction as far as cutting back in too soon was unreasonable and therefore was negligent. On this ground the defendant urges that the negligence of Schwartz was the sole cause of the accident and, failing to show any negligence on the part of defendant Davis, the North River Insurance Company is not entitled to contribution.

In the alternative, Davis asks the court to assume, *arguendo,* that he was negligent in that he pulled out too far. Then, he says, Schwartz's reaction was entirely reasonable as he took the course that any prudent man would have taken under the circumstances; being confronted with a sudden emergency, he cut to his right as soon as possible in order to avoid a head-on collision. Thus, argues Davis, the accident is due solely to his negligence as the other driver, Schwartz, is excused from his actions because they were undertaken in the face of a sudden emergency. Since, therefore, Schwartz was not negligent, the North River Insurance Company has failed to establish that the accident was caused by the concurring negligence of Schwartz, which it has to do in order to recover, and, further, that North River's action in settling the state court suits was merely that of a volunteer.

As a third alternative, the defendant Davis again asks the court to assume, *arguendo,* that he is negligent and this time, that Schwartz was also negligent. However, he now urges that the negligence of Schwartz was a subsequent, independent and supervening cause which breaks the chain of proximate cause, absolving Davis, the original tortfeasor, from anything resulting thereafter.

In this diversity case the law of Virginia must guide the court in determining whether the jury's verdict should be upheld. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Crosby v. Meredith, 300 F.2d 323 (4th Cir. 1962). Where the question is whether the evidence in a case justifies withdrawing it from the jury, the Virginia Supreme Court of Appeals has stated:

A determination, as a matter of law, that a party is guilty of, or is free from, negligence should be made only where the evidence is such that reasonable men could reach but one conclusion thereon; where fair-minded men, weighing the evidence and drawing all just inferences therefrom, would not differ in their views with relation thereto; where the evidence is without conflict and permits of one, and only one, fair result.

Giannone v. Johnson, Adm'x., 204 Va. 493, 496, 132 S.E.2d 445, 448 (1963). If, upon the evidence presented and the inferences to be drawn therefrom, rea-

sonable men could draw different conclusions the case is one for the jury. That standard applies both with respect to the question of a party's negligence and to whether that negligence was the proximate cause of the injuries suffered. Crist v. Fitzgerald, 189 Va. 109, 119, 52 S.E.2d 145 (1949).

Turning now to defendant's first contention that the evidence will not support a finding of negligence on his part, I find that I must disagree. Davis admits that he was at least contemplating passing the tractor-trailer. He concedes that in attempting to see whether it was safe to do so he may have gone one or two feet into the center lane. By his testimony, after seeing the headlights of the oncoming cars, he immediately pulled back in behind the tractor-trailer and then, after it came to a halt as a result of the collision, fearing that he would run underneath its read end, he again cut out into the center lane where his car ultimately came to rest. However, there is some conflict between the story of the defendant and the testimony of the passengers in his vehicle. Bart Conrath, who was sitting farthest to the right in the front seat of the car, testified that when they "pulled into the center lane in an attempt to pass the trailer" he, too, was able to see the four sets of headlights. Considering his position at the right side of the vehicle and that his forward perspective was diminished by the presence of the tractor-trailer, his ability to see the headlights gives rise to the inference that the Davis vehicle had proceeded well into the center lane. Conrath corroborates Davis' testimony that he pulled back in behind the truck. However, the testimony of Miss Slonaker would cause one to believe that the Davis vehicle proceeded in more or less a straight line from the point where the headlights were first observed to the point at which it ultimately came to rest. Thus, considering the physical evidence; the location of the tractor-trailer on the shoulder and in the righthand northbound lane, and the location of the Davis vehicle largely in the center lane, it was perfectly possible for the jury to have concluded that Davis either attempted to pass the tractor-trailer before making sure that it was safe to do so or that, in attempting to see if it was safe to pass the tractor-trailer, he negligently allowed too much of his car to enter the center lane, thereby creating a dangerous condition.

 Leaving the question of Davis' negligence and considering now the defendant's assertion that there was no evidence presented upon which the jury could find Schwartz to have been negligent, I, again, find that I must disagree. Of course, it was incumbent upon North River to prove the negligence of its insured. It is also true that negligence cannot be inferred from the mere happening of an accident. Both of these principles were covered in the court's instructions to the jury. In spite of the fact that the only evidence presented came from the defendant Davis and the two passengers in his vehicle, I feel that there is sufficient evidence to support a jury finding that Schwartz was negligent as to either the operation or the control of his vehicle.

Although the accident took place at night, the road was dry and the weather clear. Thus, it is to be assumed that Schwartz would have had no trouble perceiving the scene as it developed in front of him. We do know that he was in the act of passing the Adams vehicle and, although we do not know at what point he perceived the headlights of Davis' car, there is some indication in the testimony of Bart Conrath that Schwartz might not have perceived Davis' headlights as soon as he should have. We do know, from the testimony of the defendant and his passengers, that Schwartz attempted to cut back into the southbound traveling lane at a time when that movement could not be made in safety since he apparently became entangled with the front bumper of the Adams vehicle. It also can be inferred from the testimony that the action taken by Schwartz was a violent one in that it caused his car to go completely out of control on a dry pavement.

Nevertheless, the defendant contends that even if Schwartz's actions were to be considered under normal circumstances as negligent, they may not be considered such in this case because they were undertaken when he was confronted with a sudden emergency. It is well settled that a defendant when confronted with a sudden emergency which is not of his own making is not held to the same degree of care as he would have been had the emergency not existed. The Virginia Supreme Court of Appeals so stated in Virginia Transit Co. v. Durham, 190 Va. 979, 59 S.E.2d 58 (1950) at pp. 995, 996, 59 S.E.2d at p. 66:

> If an emergency really existed, then what a reasonable man should or should not have done is in the realm of inference. It is to be ascertained by a fair appraisal of the facts proved and a reasonable consideration of the usual and ordinary reaction of men confronted with similar situations. The composite judgment of a jury in this respect is usually the best means and truest test by which to ascertain and arrive at the reasonable and proper inference to be ultimately drawn.

Thus, where a defendant seeks the benefit of a sudden emergency, the jury is charged with ascertaining whether an emergency situation existed and also whether the defendant acted as a reasonable man would have acted under similar circumstances.

I am not at all compelled to the conclusion that a jury would have to find that a sudden emergency existed under these circumstances. Obviously, Schwartz was confronted with a situation of apparent or real danger. But, I do not believe it can be held as a matter of law that he acted reasonably under the circumstances. Both the extent of the emergency and the reasonableness of Schwartz's subsequent actions depend largely upon the distance between the Schwartz vehicle and the Davis vehicle at the time the Davis vehicle first entered the center lane. Counsel for the defendant Davis have argued that it was a minimum of 40 and a maximum of 70 feet. This is clearly in conflict with Davis' testimony that he was 100 to 150 feet behind the truck. Also, the testimony of Bart Conrath was that the distance was more like "2 or 3 tractor-trailer lengths". Knowing that the automobiles were approaching each other at probable relative speed of 90 miles per hour, the distance between them would close approximately at the rate of 120 feet per second. For the defendant's maximum estimate to be accurate, he would have to have undertaken a maneuver of cutting in and cutting back out again and applying his brakes all within the neighborhood of about one-half second. This seems highly unlikely. Furthermore, the collision between the Buick and the car that it was passing must have taken place some distance ahead of the tractor-trailer in order to have allowed the Buick to ricochet off the snowbank, cross the road and collide with the truck. Davis, himself, was far enough behind the truck to be able to come to a stop still some distance behind it, the truck having been halted more or less abruptly by the effect of the head-on collision. From the physical evidence, therefore, I conclude that the jury could have inferred that the distance in question was more in the neighborhood of 200 or 250 feet.

The use of a sudden emergency instruction is to relieve a defendant of responsibility for his negligence which caused injury to a plaintiff. One qualification to its applicability has always been that the sudden emergency must not have been caused by the defendant's own negligence. Frazier v. Conner, 191 Va. 481, 61 S.E.2d 880 (1950). Here, in the context of this contribution action, it is the defendant who is asserting that the plaintiff cannot prove his concurrent negligence since he was confronted with a sudden emergency. Of importance, is that the defendant who seeks to show the applicability of the legal principle was himself responsible for the danger which gave rise to the sudden emergency. Under the circumstances, I am con-

strained to apply the limitation normally present against this defendant and hold that in a contribution action where the defendant's actions are the source of the danger, he cannot raise the spectre of sudden emergency against the one seeking contribution and thereby profit from his own wrongdoing.

 Furthermore, as the jury was not instructed as to the applicability of a sudden emergency, they were free to reach their verdict without considering it. While it is the duty of the court to instruct the jury as to the law of the case, this duty does not extend to all instructions imaginable and it is the duty of counsel for the defendant wishing to bring a certain point of law to the jury's attention to propose an instruction on that point. Davidson v. Allam, 143 Va. 367, 130 S.E. 245 (1925). Therefore, even if this instruction were considered applicable here, it would have been the duty of counsel for the defendant to have proposed it.

 Defendant also argues as his third contention that the negligence of Schwartz was an independent supervening cause effectively breaking the chain of proximate causation between the negligence of Davis and the disaster which followed. Virginia law with respect to what constitutes a supervening cause is well summarized by contrasting the results in two cases. In Hubbard v. Murray, 173 Va. 448, 3 S.E.2d 397 (1939), the Court of Appeals stated at pp. 455, 456, 3 S.E.2d at p. 401:

Where a second tort-feasor becomes aware, or by the exercise of ordinary care should be aware, of the existence of a potential danger created by the negligence of an original tort-feasor, and thereafter by an independent act of negligence brings about an accident, the condition created by the first tort-feasor becomes merely a circumstance of the accident, but is not a proximate cause thereof.

In *Hubbard*, the fact that a bus was illegally stopped in the highway was held merely to be a circumstance of the accident where the driver of the truck which struck the bus had an unobstructed view of the bus for a distance of 400 feet and by the use of his brakes could have brought his vehicle to a stop within 100 feet or less, but did not do so.

 And, with respect to what constitutes a non-insulating intervening cause, the Virginia Supreme Court of Appeals said in Jefferson Hospital v. Van Lear, 186 Va. 74, 41 S.E.2d 441 (1947) at pp. 81, 82, 41 S.E.2d at p. 444:

An intervening cause does not operate to exempt a defendant from liability if that cause is put into operation by the defendant's wrongful act or omission.

\* \* \* \* \* \*

An intervening cause will not be deemed to have broken the causal connection if the intervening cause was foreseen or reasonably might have been foreseen by the wrongdoer.

While Virginia law yields no case directly in point, it is clear that the events which occurred here were so related in terms of area and in terms of time and that the injuries ultimately suffered can be said to have been so likely to have flowed as the natural and probable and foreseeable consequence of Davis' pulling too far into the center lane without having made certain that it was safe for him to do so that the question of proximate causation is at the very least one for the jury to have decided. Scott v. Sims, 188 Va. 808, 51 S.E.2d 250 (1949). The jury resolved the question of proximate cause against the defendant Davis and its finding will not be disturbed by the court. Compare, Maroulis v. Elliott, 207 Va. 503 (1967); Savage Truck Line v. Traylor, 193 Va. 579, 69 S.E.2d 478 (1952); Crist v. Fitzgerald, 189 Va. 109, 52 S.E.2d 145 (1949).

For the reasons stated in the foregoing opinion, it is ordered that the defendant's motion for a judgment notwithstanding the verdict be and hereby is denied.