**Ralph E. LONG t/a Ralph E. Long & Son, Appellee,**

v.

**VLASIC FOOD PRODUCTS COMPANY, a Michigan corporation, Appellant.**

**No. 14627.**

United States Court of Appeals, Fourth Circuit.

Argued Jan. 6, 1971.

Decided March 9, 1971.

**230**

John M. Hollis, Norfolk, Va. (Allan G. Donn, and Willcox, Savage, Lawrence, Dickson & Spindle, Norfolk, Va., on brief), for appellant.

Baxley T. Tankard, Eastville, Va. (William B. Eley and Rixey & Rixey, Norfolk, Va., and W. A. Dickinson, Roanoke, Va., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and WINTER and CRAVEN, Circuit Judges.

WINTER, Circuit Judge:

In a suit by an agent to obtain indemnity from his principal for amounts expended by him in settlement of a claim arising out of the performance of his duties as an agent, the district judge ruled that the agent was not required to prove his liability to the claimant as a condition precedent to recovery from his principal. The district judge impliedly ruled also that, on the facts of the case, the agent had made a sufficient tender to his principal of the defense of the suit against him to sustain his right to indemnity. From a judgment in favor of the agent, in the amount of $36,230.95 plus interest, the principal appeals. It urges error in both of the rulings, but we affirm.

### I

Vlasic Food Products Company ("Vlasic") is engaged in the processing and distribution of pickles and other cucumber products. The jury in the district court found that Vlasic entered into an agreement with Ralph Long whereby Long became Vlasic's agent to purchase cucumbers from growers on the Eastern Shore of Virginia, and this finding is not contested on appeal. Long contracted, as agent, to buy cucumbers from one Lucius Wescoat, among others, and the contract specified the quality of the cucumbers to be purchased.

In July, 1967, Long began accepting deliveries of cucumbers at his receiving station. One of Vlasic's inspectors was present during part of the operation. Because at least some of Wescoat's cucumbers were not of the quality specified in the purchase agreement, Vlasic's inspector instructed Long not only to refuse the deliveries which were tendered but also to refuse to purchase any other cucumbers from Wescoat. Long consulted another of Vlasic's representatives who confirmed the inspector's instructions. Long then refused further deliveries from Wescoat but, according to his testimony, not before advising Vlasic that law suits might ensue.

In November, 1967, Wescoat sued Long for $200,000.00 in a state court. At trial, the state court jury returned a verdict against Long for $17,780.00. Wescoat's representatives moved the trial court to set aside the jury verdict on the ground that it was inadequate. Although not assigning that as a reason, the state court judge did set aside the verdict and order a new trial, both as to liability and damages, because of an improper instruction to the jury. A second trial was never held because the suit was settled by Long for $29,000.00. There was testimony that while settlement negotiations were in progress Long never received an offer of settlement less than $100,000.00 until Wescoat died and his estate was substituted as plaintiff.

When Long was sued by Wescoat he gave notice to Vlasic of what had occurred by sending the suit papers to Vlasic. Vlasic neither responded to receipt of the suit papers nor to Long's subsequent inquiry, so that Long employed counsel to defend the action. Counsel kept Vlasic fully advised of the progress of the suit and, in particular, that the suit would be settled, after the first trial, for $29,000.00. Vlasic never lodged any protest to the manner in which Long's counsel conducted the defense or to the proposed settlement.

After Long settled the Wescoat suit, Long sued Vlasic for indemnity, asking recovery of the amount paid in settlement, attorney's fees, and expenses. In Vlasic relies heavily on Nationwide Mutual Ins. Co. v. Jewel Tea Co., 202 Va. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the trial of this action Long did not undertake to prove his liability to Wescoat; and Vlasic, by its motion for a directed verdict and requests for instructions to the jury which were refused, raised the issues, pressed in this appeal, that Long should not be permitted to recover without proving his liability to Wescoat and that Long did not show a sufficient tender to Vlasic of the defense of the Wescoat suit to form a basis for indemnity.

## II

Recognizing that in this diversity action we must look to the law of Virginia under Erie R. R. v. Tompkins, 304 U.S. 527, 118 S.E.2d 646 (1961), to support its contention that Long may not recover indemnity from it without proving his liability to Wescoat. That case holds that a joint tortfeasor who settles the claim of an injured person may obtain contribution without the necessity of a prior adjudication of negligence and contributory negligence before his claim to contribution is asserted. In his contribution suit, he must, however, prove his own negligence and that of the joint tortfeasor to the injured third party. The case further holds that the joint tortfeasor from whom contribution is sought may defeat the claim by showing that he was not himself liable to the injured party, or that the settlement was unreasonable or in bad faith, or perhaps that the supposed tortfeasor seeking contribution was not in fact liable, though the opinion is ambiguous as to this last defense. The rule that the party seeking contribution from a joint tortfeasor must establish his own liability is also stated explicitly in North River Insurance Company v. Davis, 274 F.Supp. 146 (W.D. Va.1967), affirmed, 392 F.2d 571 (4 Cir. 1968) (per curiam), a diversity case in which Virginia law was applied. Neither counsel nor we have been able to find any Virginia authority more directly in point.

The Code of Virginia, § 1–10 (1966 Repl.Vol.) provides that 'where there is no Virginia law in point, the English common law applies. Virginia courts have applied this provision to justify reliance on contemporary as well as pre-enactment common law doctrines. See, e. g., Foster v. Commonwealth, 96 Va. 306, 31 S.E. 503 (1898).

English common law holds that unless there is an agreement to the contrary, an agent may recover from his principal for losses and liabilities incurred in the execution of the agent's authority, in-

cluding sums reasonably expended in the compromise of actions against the agent arising out of contracts made on behalf of the principal, where the principal receives notice of the settlement, even if the third party claimant could not have succeeded in his action. 1 Halsbury's Laws of England 203 (Simonds, ed., 1952); W. Bowstead & P. Allsop, A Digest of the Law of Agency 140–43 (1951); see Pettman v. Keble, 9 C.B. 701 (1850).

The same rule is adopted by the Restatement of the Law of Agency, which states that "[u]nless otherwise agreed, a principal is subject to a duty to exeronate an agent who is not barred by the illegality of his conduct to indemnify him for; * * * (c) payment of damages to third persons which he is required to make on account of the authorized performance of an act which constitutes a tort or breach of contract * * *" American Law Institute, Restatement (Second) of Agency § 439 (1958). Comment c, relating thereto, specifies that "sums paid by him [agent] in reasonable compromise of claims, subject to the condition stated in Comment e on Section 438" are included within the agent's right to indemnity. The condition stated in Comment e on § 438 is that the agent may notify the principal of suits brought against the agent as to which he is entitled to indemnity. If the principal fails to defend, the agent may recover expenses "reasonably incurred by him in a defense made in good faith or in a reasonable compromise of the action." The Comment also states that "[i]f the agent does not notify the principal and give him an opportunity to defend, he can recover the amount paid upon the claim only if he proves that he made a reasonable defense; if, as would be frequently true, he should have given an opportunity to the principal to defend or compromise, or should have obtained additional information from the principal, he is not entitled to indemnity for losses resulting from such failure." Restatement (Second) of Agency § 438 Comment e (1958).

■ It seems manifest from these statements of the rule that in obtaining indemnity from his principal, an agent who in good faith reasonably compromised a claim arising out of the execution of his employment after his principal failed to defend him is not required to prove his legal liability therefor as a condition precedent to recovery. A similar rule has been applied to cases involving agents who have subjected their principals to tort liability. Where agents of ships have exposed the ships to tort suits, courts have allowed indemnity against the agent without relying on facts supporting the ship's liability. Paliaga v. Luckenbach Steamship Co., 301 F.2d 403 (2 Cir. 1962); Rederi A/B Dalen v. Maher, 303 F.2d 565 (4 Cir. 1962); West Coast Terminals Co. of Cal. v. Luckenbach Steamship Co., 349 F.2d 568 (9 Cir. 1965). Indeed, even where the suit against the ship has been adjudged groundless, we have permitted it to recover indemnity for the costs incurred in the successful defense of the suit. American Export Lines v. Norfolk Shipbuilding & Drydock Corp., 336 F.2d 525 (4 Cir. 1964). But see Tankrederiet Gefion A/S v. Hyman-Michaels Co., 406 F.2d 1039 (6 Cir. 1969).

■ Defendant seeks to avoid this principle of agency law by relying on cases holding that where contribution is sought between tortfeasors not in an agency relationship, the party seeking contribution must establish his own liability to the injured person. See, e. g., Nationwide Mutual Insurance Co., supra; North River Insurance Co., supra. But we think that the rationale of contribution between joint tortfeasors is not applicable where the claim to indemnity is based on principles of agency.

■ An agent is the trusted representative of his principal. An agent customarily makes expenditures for his principal in the execution of his agency. An agent is exposed to tort and breach of contract claims in the execution of his agency as a result of his designation as

agent by his principal; it is the principal who has put the agent initially in a position of peril. By contrast, joint tortfeasors are strangers to one another; there is absent the selection by one of the other to act as his representative; and neither took any part in designating the other as one whose liability might be called into question. These considerations, coupled with the established policy of the law to encourage settlement of litigation wherever possible, lead us to hold that, when indemnity is sought by an agent from his principal, the agent is not required to prove his legal liability to a claimant before he is entitled to indemnity for sums expended in defending and compromising claims if he shows that he acted reasonably and in good faith. This, it seems to us, is the rule that would be adopted by Virginia if the issue were squarely raised.

### III

We agree that a principal should not be required to reimburse his agent for the agent's expenses in defending an action and amounts paid in compromise of claims unless the principal has received notice of claims against the agent and has declined to assume their defense. See, e. g., Jennings v. United States, 374 F.2d 983 (4 Cir. 1967). This is not to say that as between principal and agent, a formal tender of the defense is required to be made by the agent. From the nature of the relationship, the principal is accustomed, and knows that he has a right, to exercise control over the agent's activities. Given sufficient notice of the third party's claim, the principal is chargeable with knowledge that he can defend it if he chooses.

We think there was ample notice of the claim here for Vlasic to have had full opportunity to have defended the action. Long warned Vlasic that litigation was probable. Long sent the Wescoat suit papers to Vlasic when they were served on him and made inquiry when Vlasic failed to respond. After Long was forced by Vlasic's inaction to employ counsel, Long's counsel advised Vlasic of each step in the litigation including the proposed settlement. Long did all that he could, short of an unnecessary formal tender, to enable Vlasic to assume the defense. We are, therefore, in agreement with the implicit assumption in the district judge's charge that there was no default on the part of Long to defeat his recovery.

Nor can we say that the state jury's initial verdict of $17,000.00 against Long in the Wescoat suit should limit his recovery from Vlasic as a matter of law. The *ad damnum* in that action was many times that amount; Wescoat himself asserted that he had been undercompensated and the state judge granted a new trial on all issues, including damages. Evidence of the subsequent negotiations and the condition of the cucumbers which had been delivered by Wescoat were all before the jury. We cannot say that its verdict exceeded the permissible limit.

Affirmed.