Argued and submitted December 12, 1988, affirmed as modified on appeal and cross-appeal September 13, Maduff Mortgage's reconsideration and Deloitte Haskins & Sells' reconsideration denied November 17, 1989, both petitions for review allowed January 5, 1990 (309 Or 231)

Petitions for review dismissed as improvidently allowed February 22, 1990 (309 Or 323)

# MADUFF MORTGAGE CORPORATION et al,
*Respondents - Cross-Appellants,*

*v.*

# DELOITTE HASKINS & SELLS,
*Appellant - Cross-Respondent.*

## (A8312-07855; CA A45241)

779 P2d 1083

James H. Clarke and Milo Petranovich, Portland, argued the cause for appellant - cross-respondent. With them on the briefs were Wayne Hilliard, Thomas W. Sondag, and Spears, Lubersky, Campbell, Bledsoe, Anderson & Young, Portland.

David B. Markowitz, Portland, argued the cause for respondents - cross-appellants. On the brief were Barrie J. Herbold, Christine T. Herrick, and Markowitz, Herbold, Stafford & Glade, Jacob B. Tanzer and Ball, Janik & Novack, Portland.

Before Joseph, Chief Judge, and Deits and Riggs, Judges.

RIGGS, J.

## RIGGS, J.

Deloitte, Haskins and Sells (Deloitte), defendant in this professional negligence action, appeals a judgment in favor of plaintiffs Maduff Mortgage Corporation (MMC) and Maduff Group, Inc. (MGI) in a jury trial. Plaintiffs cross-appeal. Both Deloitte and the Maduff companies (Maduff) make numerous assignments of error.

This case began as an action by United States National Bank of Oregon (USNB) against MMC to collect on a defaulted note. MMC answered and, with its parent company, MGI, and its affiliated corporations, Maduff & Sons, Inc. (M&S), Eastern Capital Corp. (ECC) and Commodity Correspondents Association, Inc. (CCA), counterclaimed against USNB and joined a claim against Deloitte, a public accounting firm.[1] All claims between USNB and Maduff were settled, and the court entered a partial final judgment pursuant to ORCP 67B. The case then continued with Maduff as plaintiffs and Deloitte as the only defendant.

In the complaints, Maduff alleged, *inter alia,* that Deloitte had performed inadequate audits of financial statements of MMC for the years ending September 30, 1981, 1982 and 1983 by failing to discover and disclose fraud and negligence in loans by MMC to a third party. The court submitted to the jury only Maduff's negligence claim regarding the 1982 audit. It instructed the jury that only MGI and MMC could recover, if it found Deloitte liable. The jury found Deloitte 51 percent at fault and MMC and MGI each 49 percent at fault for their respective injuries and awarded general damages of $2,000,000 to MMC and $2,500,000 to MGI. The court apportioned the damages as $1,020,000 for MMC and $1,275,000 for MGI.

MMC is a subsidiary of MGI, a Chicago-based holding company that also owned three commodities brokerages, M&S, CCA and EEC. Using a credit line at USNB guaranteed by MGI, MMC provided construction loans to builders of

---

[1] MGI was guarantor on the MMC loans involved in this action. Its claim is for damages sustained in paying debts that MMC was unable to pay. The affiliated corporations were parties on the theory that MMC, MGI, CCA, M&S and ECC were so interrelated that each of the corporations sustained damages as a direct result of defendant's negligence.

residential housing. When construction was completed, MMC would provide permanent mortgage financing for the purchaser, and the proceeds of the mortgage loan would be used to pay off the construction loan. MMC would then sell the mortgage loans.

MMC's policy was to lend up to 80 percent of the expected value that a planned residence would have when it was completed, securing the loan with a trust deed on the property. Often, MMC required a prospective buyer to execute a "presale agreement," promising to purchase the residence when it was completed. MMC would disburse construction funds in accordance with the progress of construction.

In 1981, MMC began lending to Macal Development (Macal), a Portland builder. The Macal loans are a primary focus of this case. By September 30, 1982, a number of MMC's construction loans to Macal were over-disbursed. There was evidence that Macal diverted loan funds to uses other than those permitted under the loan agreements and that the required presale agreements were either not obtained or were forged or that no presale occurred. There was also evidence that the principals of Macal responsible for those irregularities were aided by Brazeau, the president of MMC, and other MMC employes.

Deloitte audited and reported on MMC's financial statements for the years ending September 30, 1979, through September, 1982. According to Maduff, if Deloitte had discovered the irregularities in the Macal loans during the 1982 audit, its losses would have been minimal. Instead, by the time MMC became aware of the problems in May, 1983, the situation was irremediable, and MMC was subsequently forced out of business.

At a post-trial hearing, the court set off against the verdicts plaintiffs' recoveries from several third parties, including a recovery on a fidelity bond. The court reduced the verdict for MMC by $350,358 and for MGI by $218,018. MMC's net judgment was $669,642, and MGI's was $1,056,982. In addition, the court awarded plaintiffs

$22,434.10 as costs and disbursements, plus interest from July 2, 1985.[2]

The Maduff companies and Deloitte appealed. We dismissed both appeals and remanded the case for entry of a final judgment. *Maduff Mortgage Corp. v. Deloitte Haskins & Sells*, 83 Or App 15, 730 P2d 558 (1986), *rev den* 303 Or 74 (1987). While the case was pending in this court, Maduff entered into additional settlements in other actions against other parties. When the case came before the circuit court for entry of judgment, Deloitte moved to set off those additional recoveries against the verdicts or for a judgment in its favor on the ground that one of those recoveries constituted a satisfaction of plaintiffs' claims against Deloitte. The court denied Deloitte's motions and entered a final, appealable judgment on July 8, 1987.

■ Deloitte first assigns as error the trial court's failure to give its requested instruction on an auditor's responsibility for detecting fraud. The court instructed the jury:

> "Accountants when retained to perform auditing services are required to exercise that care, skill and diligence that is generally practiced by careful accountants in the United States employing generally accepted auditing standards.
>
> "An accountant's stated opinion that an audited financial statement presents fairly the financial position of a company is an opinion. It is not a warranty or guarantee that such statement accurately reflects the company's financial condition. The law requires only that in rendering the opinion, the accountant exercise the care, skill and diligence generally practiced by careful accountants."

Deloitte's requested instruction in effect states that an auditor is not liable for failing to detect fraud unless it has failed to comply with generally accepted auditing standards:

> "An ordinary audit cannot be relied upon to assure that fraud or deliberate misrepresentations by plaintiff's management will be discovered. The defendant is not an insurer or guarantor if it turns out that fraud occurred and the defendant did not discover it. The defendant does have a responsibility for failing to detect fraud when such failure clearly results from the defendant's failure to comply with Generally

---

[2] On August 16, 1985, the judgment was amended *nunc pro tunc* to reduce the award of costs to $3,768.54.

Accepted Auditing Standards. The subsequent discovery of fraud does not of itself mean that the defendant's examination was negligently done."

Deloitte contends that the standards promulgated by the American Institute of Certified Public Accountants (AICPA) are the generally accepted auditing standards against which an auditor's examination must be evaluated and that its requested instruction incorporates those standards.[3] Deloitte also requested that several other AICPA standards covering the detection of fraud be included in jury instructions. The requested standards were admitted as evidence, but not given as instructions. Deloitte argues that, without an instruction on those standards, a jury would not understand that a finding that there was fraud that Deloitte did not discover would not necessarily mean that the audit was inadequate.

■     MMC argues that the AICPA standards are only evidentiary. We agree. They are principles and procedures developed by the accounting profession itself, not by the courts or the legislature. They may be useful to a jury in determining the standard of care for an auditor, but they are not controlling. The amount of care, skill and diligence required to be used by defendant in conducting an audit is a question of fact for the jury, just as it is in other fields for other professionals. *See, e.g.,* ORS 677.095; *Rogers v. Meridian Park Hospital,* 307 Or 612, 772 P2d 929 (1989).

■     Deloitte next assigns as error the court's failure to give these requested instructions:

"You are instructed that a corporation can act only through its officers, agents, or employees. In this case, if any officers, agents or employees of Maduff Mortgage Corporation were negligent in any respect, then such negligence is to be treated as the act of Maduff Mortgage Corporation, if such

---

[3] Deloitte cites *Statements on Auditing Standards,* § 327.13, issued by the American Institute of Certified Public Accountants, which states:

"[I]n view of * * * limitations on the effectiveness of auditing procedures, the subsequent discovery that errors or irregularities existed during the period covered by the independent auditor's examination does not, in itself, indicate inadequate performance on his part. The auditor is not an insurer or guarantor; if his examination was made in accordance with generally accepted auditing standards, he has fulfilled his professional responsibility."

officers, agents or employees acted within the scope of their authority.

"The directors of a corporation are the corporation's agents for managing its affairs."

Deloitte argues that there was substantial evidence of either fraud or negligence on the part of employes of MMC and of at least negligence on the part of MMC directors and that the jury might have found MMC and MGI more than 49 percent contributorily negligent, if it had been properly instructed.

The trial court denied Deloitte's agency instructions on the basis that they were misleading but did not elaborate further. It did, however, offer to give the UCJI agency instruction.[4] Deloitte refused. In instructing on contributory negligence, the court gave the jury, as a supplement to the instructions, copies of "Defendant's Claims of Contributory Negligence." Each of defendant's written claims begins with the phrase "Maduff Mortgage Corporation, its officers, employes, and its Board of Directors" and concluded with the specific conduct that defendant alleged was negligent. The contributory negligence instructions adequately instructed the jury to consider the conduct of all MMC employes and directors in determining whether MMC was negligent. Consequently, the court did not err in failing to give the requested instruction.[5]

The next assignments of error that we address concern setoffs against MMC's and MGI's verdicts against Deloitte. In its original judgment, the court reduced the verdicts in favor of MMC and MGI by the amount of recovery on a fidelity bond insuring against employes' misconduct. On cross-appeal, MMC and MGI assign those reductions as errors.

---

[4] We assume that the court meant UCJI No. 50.02, which provides:

"You are instructed that a corporation can act only through its officers, agents or employees. In this case, if any officer[s], agent[s], or employee[s] of the corporate party [was] [were] negligent in one or more respects as charged against that party, such negligence is to be treated as the act of that party, if within the scope of such person's authority."

Maduff claims that Deloitte's adaptation of that instruction is not neutral because it singles out MMC.

[5] Deloitte's third and fourth assignments of error merit no discussion.

In his closing argument at trial, MMC's counsel told the jury that the court would reduce damages that it might award by any recoveries in any actions against other parties. The complaints from MMC's other actions were admitted in evidence. The court also instructed the jury to award the total damages to which it believed that plaintiffs were entitled and that the court would deduct "any recovery" by plaintiffs on claims in other cases that duplicated "amounts sought in this case."

At a post-trial hearing concerning setoffs, MMC objected to the court's proposed setoff of its recovery on the fidelity bond, arguing that it was a recovery from a collateral source and, therefore, not subject to setoff.[6] The court denied the objection on the ground that MMC had waived its claim that the recovery was a collateral source by the position that its counsel took at trial. The court also expressed doubt that the collateral source rule applies in a situation where, as here, the insurer had waived its right to subrogation.[7]

■ We hold that MMC had not waived its right to raise the collateral source rule at the post-trial hearing, because its position at trial was not inconsistent with the rule. The jury instruction was a proper statement of the law that setoff issues are in the province of the court. *See Yardley v. Rucker Brothers Trucking, Inc.,* 42 Or App 239, 242, 600 P2d 485 (1979), *rev den* 288 Or 335 (1980); *see also* 3 Minzer, *Damages in Tort Actions* (1988 ed), §17.00, 17-14. We presume that the jury followed the instructions. MMC's assurances in closing argument that the court would not permit double recovery were consistent with that instruction.

Deloitte is incorrect in its assertion that the collateral source rule is inapplicable when an insurer has surrendered its subrogation rights. It argues that, if the insurer is not subrogated, the basic premise for refusing to set off recoveries from collateral sources, *i.e.,* promotion of payment of an injured party by the wrongdoer, does not exist. When an insurer is

---

[6] MMC and MGI each recovered $275,000 on the fidelity bond. Because their positions were argued together, for convenience we refer to MMC in the singular in this discussion. The same analysis applies to both recoveries.

[7] In the "Release and Settlement Agreement" between the bonding company and MMC and MGI, the company assigned "all subrogation claims or other rights" to MMC and MGI.

subrogated to the rights of the injured party, the rule serves additionally to implement its subrogation rights. Oregon law does not require, however, that the collateral source rule be applied only in situations where there are subrogation rights. Indeed, in *Seibel v. Liberty Homes, Inc.,* 305 Or 362, 752 P2d 291 (1988), the Supreme Court applied the rule to preclude a reduction in the defendant employer's liability by the Social Security disability benefits received by the plaintiff after the employer had breached the employment contract. No subrogation rights were involved.

■ A fidelity bond is an insurance contract. Amounts recovered on a bond insuring against employe dishonesty are collateral payments, because they are not payments made for the tortfeasor. The collateral source rule prohibits the setoff of insurance recoveries. *Stanfield v. Loccoarce,* 284 Or 651, 665, 588 P2d 1271 (1978); *Shore v. Livengood,* 234 Or 280, 381 P2d 492 (1963); *Restatement (Second) Torts,* § 920A(2), *comments b* and *c* (1965). Consequently, we hold that the trial court erred in reducing MMC's and MGI's judgments by the bond recoveries. We modify the MMC judgment by restoring the $271,598 net fidelity bond recovery and the MGI judgment by restoring the $218,018 net recovery.[8]

■ After our remand, Deloitte moved for setoffs of several third party recoveries that MMC and MGI had obtained in the interval between the trial and our remand or, in the alternative, for judgment in its favor on the ground that one of those recoveries constituted either a covenant not to sue or a satisfaction of the judgment against it.[9] The court denied those motions. Deloitte first argues that MMC and MGI are

---

[8] The settlement agreement provided for a payback from MMC and MGI to the insurer of a percentage of their net recoveries in the action against Deloitte. Consequently, only $271,598 of the $275,000 payment was credited against MMC's verdict, and only $218,018 of the $275,000 payment was credited against MGI's verdict.

[9] MMC obtained a judgment against the appraiser, Huget, for $1,557,512. MGI was not a party to that action. Under a subsequent settlement, Huget paid MMC $900,000 in cash, assigned her claims against her insurer and 98 percent of her claims for malpractice against her attorneys and promised to cooperate in the prosecution of those claims. MMC agreed not to execute on the judgment against Huget, to release specific property from judgment liens at Huget's request and to file a satisfaction if she cooperated in the prosecution of the claims.

MMC also received $75,000 and $30,000, respectively, from Chicago Title Insurance Company and Title Insurance Company of Oregon to settle its action against them.

estopped by their conduct at trial from denying the setoffs. That argument is unpersuasive for the same reason that we rejected Deloitte's similar argument concerning the collateral source rule. Because the jury was instructed to award the full amount of damages to which it found that MMC and MGI were entitled, any statements that their counsel made regarding setoffs were not prejudicial to Deloitte.

Each of Deloitte's other theories hinges on the premise that the injuries for which MMC recovered from third parties were the same injuries for which Deloitte was found liable.[10] Deloitte, as the party seeking the setoffs, has the burden of proving that the injuries for which recovery was sought were the same in each action. OEC 305; *North River Insurance Co. v. Davis,* 274 F Supp 146, 149 (WD Va 1967), *aff'd* 392 F2d 571 (4th Cir 1968); *Young v. Steinberg,* 53 NJ 252, 255, 250 A2d 13 (1969). It introduced affidavits of counsel, supported by the pleadings, the jury instructions and the verdict form in MMC's action against Huget. Deloitte points to the similarity of the pleadings in this action and in the Huget action as support for its position that the injuries for which it and the defendants in the Huget action were found liable were the same.

In its action against Huget, MMC alleged:

---

[10] Deloitte contends that it is entitled to a "setoff" against the judgment against it of other recoveries if the injuries compensated in the two actions are the same. A setoff involves mutual obligations between a plaintiff and a defendant. *See* 20 Am Jur 2d, "Counterclaims, Recoupment, etc.," § 2; *Holland Developments v. Manufacturers Consultants,* 92 Or App 80, 756 P2d 1280 (1988). Because MMC has no obligation to Deloitte, the law of setoff is inapplicable.

Deloitte also seeks partial satisfaction of the MGI judgment for the amount by which the Huget judgment exceeded the judgment for MMC on the theory that MGI is a subrogee of MMC. Because our modification of the judgment for MMC increases Deloitte's liability to $1,020,000, the Huget payment of $900,000 could operate at most as a partial satisfaction of the *MMC* judgment. There would be no excess to apply against the MGI judgment. Thus the issue of Deloitte's entitlement to a partial satisfaction against MGI based on principles of subrogation is moot.

Finally, Deloitte argues that the Huget-MMC settlement agreement, although not so designated, amounted to a covenant not to sue within the meaning of ORS 18.455(1)(a). Under that theory, Deloitte would be entitled to credit on MMC's judgment against it the amount Huget paid on the judgment against her. Alternatively, Deloitte argues that the parties intended MMC's settlement agreement with Huget to be a satisfaction of the judgment. Under ORS 18.450(6), satisfaction of the Huget judgment would discharge Deloitte's liability as well, assuming that the two judgments were compensation for the same injuries. Our resolution of the same injuries argument, *infra,* disposes of both these theories.

"As a direct result of defendant's negligence, plaintiff was damaged in the following particulars:

"1.   Plaintiff committed to loan to Alpha, Macal, D&R and the related individuals, amounts far in excess of the 80% true value of the properties, and in many instances, amounts in excess of the true value;

"2.   Plaintiff disbursed to Alpha, Macal, D&R and related parties amounts far in excess of the 80% true value of the properties, and in many instances, amounts in excess of the true value;

"3.   As a result of not maintaining an 80% loan-to-value ratio, individual borrowers had no equity in the homes, loans were inadequately secured and many borrowers have defaulted;

"4.   Plaintiff's lender filed a foreclosure action related to some of the mortgages which had been assigned to the lender;

"5.   Secondary market end-loan purchasers and mortgage insurers have filed legal claims against plaintiff; and

"6.   Plaintiff has incurred excess expenses, interest charges, closing costs, attorneys' fees and lost profits.

"As a result of defendant's negligence, plaintiff has been damaged in the amount of $10,200,000."

In this action, MMC and MGI claimed that Deloitte's alleged negligence had led to numerous lawsuits against it and had caused other injuries, including

"impairment of borrowing power and loss of credit; loss of business reputation and goodwill; loss of customers and business opportunities; loss of personnel resources; loss and diversion of management resources; lost profits, increased expenses and increased management burdens. MMC, MGI and M&S have been further damaged through loss and impairment of assets; substantial MMC borrowers have not repaid and cannot repay their loans, and the collateral was inadequate to satisfy the debtors' obligations."

A comparison of the pleadings reveals that there is at least a partial overlap in the injuries for which damages were sought. In both actions, MMC sought compensation for damages resulting from loans that were over-disbursed. Among the injuries claimed in both actions are lost profits, impairment of assets and expenses of legal actions brought as a result of the failure of the loans. All of the legal actions

against it that MMC alleged resulted from Huget's negligence in the Huget complaint are also listed in the complaint here.

We must consider more than the pleadings, however, to determine if the injuries compensated in the two actions are the same. Of particular significance is the measure of damages in each case. In suing Huget, MMC sought compensation for losses caused by errors in appraisals that she made between March, 1981, and April, 1983. The court instructed the jury:

> "If you find that [MMC] was a third party of the sort or kind that Huget reasonably knew or should have known would rely on her appraisals, and if you find that Huget was negligent in making appraisals, then you must decide if Maduff was damaged by such negligence, and if so, the amount of money which would compensate [MMC] for such damage.
>
> "In considering the amount of claimed damage, you must consider each of the items claimed by [MMC], provided you find such item of claimed damage to have been suffered by [MMC] as a result of any negligence of Huget. [MMC] must prove each item of damage by a preponderance of the evidence."

Thus, the damages awarded potentially included any arising between April, 1981, and October, 1982, the date that the allegedly defective audit report was issued.

In this case, in contrast, the jury was instructed:

> "The measure of the damages, if any to [MMC], is the decrease in fair market value resulting in whole or in part from defendant's alleged failure to exercise the required care, skill and diligence between the time of the audit and the date of the discovery of the Macal problems by [MCC's] Board of Directors on or about May 15, 1983."

Deloitte was, therefore, liable only for damages that could have been prevented if its audit for 1982 had not been negligent. Clearly, it would not have been liable for any injuries that MMC sustained in the period between April, 1981, and the fall of 1982, as a result of the Huget over-appraisals, because it could have done nothing to prevent those injuries. Furthermore, because the jury in the Huget trial was instructed to consider all damages that resulted from the over-appraisals, and lost profits were among those alleged injuries,

the Huget recovery presumably could cover any injuries sustained after May 15, 1983, the latest time for Deloitte to incur liability.

Although Deloitte has established that some overlap exists between the injuries for which damages were sought in the two actions, it has failed either to prove that the injuries were identical or to delineate those that are identical and those that are not. Consequently, we affirm the trial court's denial of Deloitte's motions for satisfaction or partial satisfaction of the judgment against it.

Deloitte also seeks to reduce the judgment against it by amounts that MMC recovered in settlement of its action against Chicago Title Insurance Company and Title Insurance Company of Oregon. In that action, MMC alleged claims in tort, contract and indemnity, all relating to defective acknowledgements on which it had relied in disbursing loans. Again, although some of those alleged injuries probably overlap some of those claimed in this action, Deloitte has not proved the necessary identity of injuries. Consequently, we affirm the trial court's denial of Deloitte's motion.

■ Deloitte last assigns error to the trial court's allowance of interest beginning July 2, 1985, the date of entry of the original, defective judgment. It argues that interest should have been awarded instead only from July 8, 1987, the date of entry of the final judgment on remand. We agree. Under ORCP 67A, a "judgment" is "the final determination of the rights of the parties in an action." An "order" is "any other determination by a court or judge which is intermediate in nature." Under ORCP 67B, "any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all parties shall not terminate the action as to any of the claims or parties" unless the court expressly determines that "there is no just reason for delay" of entry of judgment as to one or more but fewer than all of the claims or parties and directs entry of judgment. The trial court made no such express determination when it failed to dispose of defendant's counterclaims in its July 2, 1985, "Judgment Order." Thus, it simply was not a judgment under ORCP 67A or 67B. Interest is allowed only on a judgment. ORS 82.010(2)(a).

MMC and MGI argue that the interest could be characterized as prejudgment interest rather than postjudgment interest. This argument does not help them, because no definite sum, due at a definite time, was ascertainable until entry of the final judgment. *Bollam v. Fireman's Fund Ins. Co.,* 76 Or App 267, 276, 709 P2d 1095, *rev'd on other grounds* 302 Or 343, 730 P2d 542 (1986). We modify the judgment to delete any reference to interest between July 2, 1985, and July 8, 1987.[11]

On appeal, judgment modified to delete award of interest for the period from July 2, 1985, to the date of judgment; on cross-appeal, judgment modified to increase award to Maduff Mortgage Corporation to $941,240 and to Maduff Group, Inc., to $1,275,000; otherwise affirmed on appeal and on cross-appeal.

---

[11] In its cross-appeal, Maduff assigns as errors the trial court's entry of judgment against CCA and M&S and its exclusion of testimony and exhibits relating to direct and consequential damages sustained by CCA. It appears that Maduff is actually objecting to the court's dismissal of M&S' and CCA's claims against Deloitte during a hearing held after both parties had rested their cases and before jury instructions were given. In any event, because the jury evaluated neither the liablilty of Deloitte to CCA and M&S nor the amount of damages involved, if any, remand on those assignments of error would require a new trial. Consequently, at Maduff's request, we consider those assignments of error to be withdrawn.

The other assignments of error raised on appeal and on cross-appeal require no discussion.