## Staunton

### ATLANTIC COMPANY, A CORPORATION, TRADING AS BOUSH ICE & COLD STORAGE PLANT v. ROBERT P. MORRISETTE.

September 4, 1956.

Record No. 4546.

Present, All the Justices.

The opinion states the case.

*Leigh D. Williams* (*Michael B. Wagenheim, Thomas R. Mc-Namara*, on brief), for the plaintiff in error.

*Jerrold G. Weinberg* (*Louis B. Fine,* on brief), for the defendant in error.

Smith, J., delivered the opinion of the court.

The plaintiff, Robert P. Morrisette, brought this action against the defendant, Atlantic Company, a corporation trading as Bousch Ice & Cold Storage Plant, seeking the recovery of damages for personal injuries allegedly caused by the negligence of the defendant, and obtained a verdict and judgment in the sum of $4,500. To review that judgment we awarded defendant a writ of error.

Plaintiff's injuries allegedly resulted from a fall which occurred while he was engaged in transferring seventy-five 100 pound bags of potatoes from defendant's cold storage warehouse into a truck he had backed up to an open doorway of the warehouse. The potatoes were kept in storage by defendant but they were owned by Furman Produce Company, plaintiff's employer at the time of the accident.

Defendant contends that it is not liable to plaintiff because: (1) it was not guilty of any primary or actionable negligence; (2) the plaintiff was guilty of contributory negligence; and (3) its alleged negligence was not the proximate cause of plaintiff's injuries. In our view of the case it is necessary to discuss only the question of whether defendant was guilty of primary or actionable negligence.

[█] It is well settled that to constitute actionable negligence there must be a legal duty, a breach thereof and a consequent injury which could have been reasonably foreseen by the exercise of reasonable care and prudence, and where there is no breach or violation of a legal duty to take care for the safety of the person or property of another there can be no actionable negligence. *E. g., Trimyer* v. *Norfolk Tallow Co.,* 192 Va. 776, 66 S. E. 2d 441; *Wyatt* v. *Chesapeake, etc., Tel. Co.,* 158 Va. 470, 163 S. E. 370, 82 A. L. R. 386; *Va. Ry. & P. Co.* v. *Winstead,* 119 Va. 326, 89 S. E. 83; 13 Michie's Jur., Negligence, § 12, p. 517; 38 Am. Jur., Negligence, § 11, p. 651.

█ Since plaintiff was on defendant's premises as its invitee, it owed him the duty to use ordinary care to have its premises reasonably safe for his visit. In the instant case this duty of ordinary care required that defendant give plaintiff notice or warning of latent dangers which were known or should have been known to it and were unknown to plaintiff, but no notice or warning was required if the alleged dangerous condition was open and obvious to a person exercis-

ing reasonable care for his own safety. Therefore, in order for plaintiff to sustain his charge of negligence the unsafe condition relied on must be one of which defendant knew or should have known, and one of which plaintiff did not know and which he could not reasonably have discovered. *E. g., Charles* v. *Commonwealth Motors,* 195 Va. 576, 79 S. E. 2d 594; *Crocker* v. *WTAR Radio Corp.,* 194 Va. 572, 74 S. E. 2d 51; *Trimyer* v. *Norfolk Tallow Co., supra; Knight* v. *Moore,* 179 Va. 139, 18 S. E. 2d 266.

We shall examine the evidence in the light of the above principles.

■ The record discloses that plaintiff had been on defendant's premises before the accident and was generally familiar with the surroundings. The doorway opening of defendant's warehouse, where plaintiff backed his truck, was eight feet wide, the door facings were 23 inches thick, and the floor of the doorway or loading platform was made of concrete and was level. The truck bed was twelve feet long and six feet wide, and when the truck was empty its bed was ten inches lower than the loading platform of the warehouse.

The potatoes were brought by defendant's employees to the doorway on a platform truck or float, which consisted of a flat bed seven feet one inch long and three and one half feet wide, mounted on four wheels. Its two rear wheels were on fixed axles so that they could not turn sideways, and the two front wheels were mounted on swivels and could be turned at a very sharp angle by a handle at the front of the float. The bed of the float was about twenty inches above the loading platform and about thirty inches higher than the bed of the truck when empty.

The float was loaded with twenty-five bags of potatoes and placed in the doorway lengthwise, "right across the door," and when so placed by defendant's employees control of the float was relinquished to plaintiff until he had completed unloading it. When the float was fully loaded plaintiff stood on the loading platform and lifted a bag at a time on to his shoulder and then turned and lowered it into the rear of his truck. After he had removed the top two tiers of bags in this manner he would get down from the loading platform on to the rear of his truck and stand with one foot up on the loading platform, from which position he would pull the bags off the float on to his shoulder and then turn and drop them into his truck. He placed some of the bags to his left and some to his right, leaving room to stand. When a float was emptied by plaintiff, defendant's employees replaced it with the next loaded float.

Prior to the accident, plaintiff had unloaded, without mishap, two full floats of 25 bags each and had also unloaded five or ten bags from the third. The only evidence as to how the accident happened is that of the plaintiff himself. He testified on direct examination as follows:

"A. This one truck [float] that I was unloading, I will say there was twenty bags left on it, and I had my right foot up on the Boush platform and leaned over to get a bag of potatoes. When I did, the truck rolled into me and pinned my pants' leg. I couldn't move at all.

"Q. The truck did what?

"A. The truck rolled into me. It rolled into the corner of the building. If it had not hit the corner of the building, it would have rolled clean on out—

\*     \*     \*     \*     \*     \*     \*

"A. After I tried to get away from the truck, which hooked me in the pants, I fell over backwards, over two bags of potatoes which would be, I would say, that high (indicating). My feet were under the corner of the truck.

"By the Court:

"Q. Let me see if I understand you. The truck hooked you in the pants?

"A. Your Honor, when I fell over backwards my feet caught under the truck—in other words, they could not go any higher—and I had potatoes on my shoulder.

"Q. Did the truck strike you in the stomach?

"A. The truck hit me on my leg, Your Honor, up above the knee.

"Q. Go ahead.

"A. I fell over backwards, over two bags of potatoes, with 100 pounds on my shoulder, which throwed me all the way back, with my feet under the end of the truck. I hope I never have another pain like I had then.

On cross examination plaintiff testified as follows:

"Q. \* \* \* Tell me what part of the truck got caught in your pants?

"A. It was the cotter key that holds the wheel on the axle. I picked this bag up to turn around, to lay it down, when it caught my pants, and the truck come on toward me and I was trying to get out

of the way. If the truck had not rolled in the corner of the building, it would have run right on out on me."

From these various accounts of how the accident happened it is not clear whether the float was caused to move by plaintiff's getting his pants caught on a cotter key, or by his pulling the bags off the float, or by some unknown force. In any event, it must be taken as established that the float moved at least a short distance toward the plaintiff. This evidence of the float's movement gives rise to plaintiff's sole claim of negligence on the part of defendant. He contends that defendant owed him the duty of keeping the float stationary while it was being unloaded and that this duty was breached when it failed to "chock" the float, that is, place a block or blocks under its wheels to prevent movement. He attempted to establish this duty by the following testimony:

"Q. Had you gone there [defendant's warehouse] before this time and used that same truck [platform truck or float]?

"A. Yes, sir.

"Q. State whether or not it had been chocked?

"A. Yes, sir, it had been chocked before. I have been to the Texas Company and the Naval Base, and everywhere, and they chock the trucks for their own good.

  \*    \*    \*    \*    \*    \*    \*

"Q. You had unloaded two of them before, hadn't you?

"A. Yes, sir, I had.

"Q. And you figured it had to be chocked?

"A. Yes, sir, that the truck had to be chocked. When you pull weight off of it, it has to have something to hold it substantially.

"By the Court:

"Q. You mean you assumed that heretofore the truck must have been chocked because it did not roll?

"A. Yes, sir."

Then in referring to the float that rolled or moved toward him, plaintiff testified:

"Q. And all you had to do was to look down at the wheels to see if they had chocks on each side? That was all you had to do, was to look?

"A. That is all I had to do, but I never do, because companies always chock their own trucks. They don't tell you nothing about looking for chocks."

There is no evidence that plaintiff or anyone else ever saw chocks used on defendant's platform trucks or floats. Plaintiff's testimony that all of defendant's floats that he had unloaded prior to the last one were chocked is based merely on his assumption of this fact because they did not move and because the floats at other places he had been were always chocked. He did not, in fact, say that he saw chocks used at other places. Furthermore, there is no evidence that the loading platforms and floats seen by plaintiff at other places were similar to defendant's. On the other hand, an employee of defendant since 1920 testified that it was not a custom of the trade to use chocks and that he had never seen them used.

In addition, there is no evidence that there was anything defective about the platform truck or the loading platform or the manner in which the potatoes were loaded on the float. When the float was placed in the doorway it could not be rolled forward or backward more than eleven inches at the most, and since its rear wheels were on stationary axles, the only movement sideways it could make would be to pivot until it came in contact with the door facings, and this could only amount to a total movement of a little more than a foot. And since the floor of the platform was level the force of gravity would not cause a float, loaded or unloaded, to move.

Moreover, when the loaded float was delivered to defendant's open doorway or loading platform, its control was relinquished to plaintiff who could have moved it, chocked it or in any manner conducted his loading operation according to his own design. Therefore, even if defendant's failure to chock the float that moved toward plaintiff created a dangerous condition, which plaintiff has not established, it could have been discovered by him if he had been exercising reasonable care for his own safety. He testified that it was dangerous to unload floats that were not chocked, but he admitted that he "wasn't noticing" whether any of the three floats was in fact chocked. At the time of the accident he was standing on the bed of his truck, which was at least thirty inches lower than the bed of the float and probably lower due to the approximately 6,000 pounds of potatoes then loaded, and therefore by a mere glance could have discovered whether the float was actually chocked.

Consequently, we hold that the defendant fulfilled its duty to plaintiff in every respect when its employees delivered the properly loaded float in good working condition to the plaintiff on a proper loading platform and permitted him to use it as his own implement

for loading his truck. It follows, therefore, that the evidence does not show that defendant was guilty of actionable negligence in failing to chock the float that allegedly caused plaintiff's injuries.

For the reasons stated the judgment complained of is reversed and final judgment will be entered for defendant.

*Reversed and final judgment.*