# Richmond

VIRGINIA MILES BARTLETT v. ROBERTS RECAPPING, INC.

March 6, 1967.

Record No. 6335.

Present, All the Justices.

*James C. Turk* for the plaintiff in error.

*Philip M. Sadler* (*Gilmer, Sadler, Ingram, Thomas and Sutherland,* on brief), for the defendant in error.

SNEAD, J., delivered the opinion of the court.

Roberts Recapping, Inc., complainant, filed a bill of complaint against Virginia Miles Bartlett, defendant. Complainant sought a contribution of $14,850 from defendant as a joint tort-feasor in an

automobile accident after it had settled claims for personal injuries with John Walter Webb and Marvin Eugene Hall, Jr., and another claim for death by wrongful act with the administrator of the estate of David Lewis Turner. Code, § 8-627. The settlements and expenses incurred amounted to $29,700.

In its amended bill, complainant admitted liability to the three claimants, but alleged that Mrs. Bartlett, the defendant, was guilty of concurring negligence which efficiently contributed to the injuries and death of the claimants. Defendant filed a plea alleging grounds of defense which would bar a recovery and complainant took issue upon the plea. In accordance with the provisions of Code, § 8-213, defendant's motion for a jury trial of the issues was granted. It was stipulated that if complainant was entitled to recover anything, the amount of the verdict should be $14,850, being one-half of the total cost of the settlements. After defendant's motion to strike complainant's evidence was overruled the jury returned a verdict for complainant in the stipulated amount. Defendant's motion to set aside the verdict was taken under advisement. By a decree entered on September 1, 1965, the motion was overruled and judgment was entered in accordance with the jury verdict. We granted defendant an appeal.

The evidence may be summarized as follows:

On October 27, 1960, at approximately 6:30 p.m. Mrs. Bartlett, the defendant, left her home located on Route 11 in Montgomery county and drove westwardly toward Bowyer's Esso Station, located on that highway about a quarter of a mile from her home, for the purpose of buying soft drinks, and gasoline for her vehicle. At a point two miles east of the corporate limits of Christiansburg and one-tenth of a mile east of Bowyer's Esso Station, the motor to Mrs. Bartlett's new Ford station wagon suddenly cut off "just like it had been doing on previous times". When this occurred Mrs. Bartlett said she was traveling at a speed not more than 35 or 40 miles an hour. The vehicle stopped with all four wheels in the westbound lane of the highway.

At the scene of the mishap, Route 11 is straight, level, hard-surfaced, and has three lanes of travel with each 10 feet wide. The westbound lane is marked with double solid lines so as to prohibit passing for westbound traffic. The shoulders on each side are wide enough for a vehicle to park completely off the hard surface of the road. East of the scene the unobstructed view is "at least" a quarter mile, and

to the west of it the view is more than one-tenth of a mile. It was dark and not raining, but the road was wet because of intermittent showers. Visibility from a car was "poor".

Mrs. Bartlett testified that after her motor cut off she "wanted to get to the shoulder" but could not do so because an unidentified car was there and blocked her. A Mason-Dixon truck traveling in the same direction she was headed passed her. She realized before it passed that she was in a dangerous situation and turned on her signal light. Then a car occupied by a gentleman and a lady stopped beside Mrs. Bartlett's station wagon and they offered to render her assistance. She requested that they "go to Bowyer's Esso and tell Jerry that Mrs. Bartlett is down here and to bring some gas and see if he can get my car started." Mrs. Bartlett said she left the lights burning on the car and descended from it to warn traffic.

John Walter Webb had previously parked his car on the westbound shoulder about 75 to 100 feet from the point the Bartlett vehicle stopped. When he noticed her vehicle in the road he walked over to it and "offered to help." He said that Mrs. Bartlett informed him that "the car had stalled and she had sent up to the service station for some gasoline or something like that." He also stated that Mrs. Bartlett at no time requested him to push the car off the road.

While Mrs. Bartlett and Webb were talking, two Virginia Polytechnic Institute students, Marvin Eugene Hall and David Lewis Turner stopped their automobile abreast of the Bartlett vehicle and asked Webb if "he needed any help." According to Hall, Webb told them that he was trying to get the car off the road. Thereupon Hall and Turner drove ahead of the Bartlett car and after parking their automobile on the shoulder came back to help push the station wagon. Hall stated that Mrs. Bartlett did not request them to push her vehicle off the highway.

Mrs. Bartlett testified that she was told by the boys to " 'Get in the car and we'll push you off' ", and that she replied, " 'I guess Bowyer will be here any minute, because I sent for help.' " However, Webb, Hall and Turner went to the rear of the station wagon and got in position to push it. Mrs. Bartlett walked to the edge of the highway, looked in both directions and "there was nothing in sight." Just as she was about to enter the vehicle to steer it off the road she observed a truck leaving Bowyer's Esso Station. She turned and "hollered" to the boys, " 'Here comes Jerry now.' " At that instant automobile tires "started falling and flying" from complainant's truck approach-

ing from the rear. She stated: "[I]t happened so fast that I had no time for warning."

James Edgar Walters, who was operating complainant's truck, testified: "When I first came up, all I seen was a man's back with a dark jacket, I hit my brakes, the first thing I thought it was a man in the road. But as I got nearer it looked like a light on top of a thing. It looked like it was more, more than one man. So when I hit my brakes I just kept them locked until I seen I was getting nearer to this thing. There I cut the thing sideways, thought maybe it would stop the thing quicker or else miss it. I locked all four wheels and I slide it sideways." He stated that as he "neared" the scene his speed was "not over 40 miles at the most."

According to Sheriff McConnell (a State trooper at the time of the mishap), who arrived at the scene of the accident "a few minutes after it happened", the truck came to rest 11 feet from the rear of the Bartlett station wagon and at a right angle to the highway, completely blocking the center lane. The truck laid down dual tire skid marks of 104.5 feet in the westbound lane.

The truck itself did not make contact with the automobile. In making the sudden stop, wooden stakes on the right side of the truck sheared off and a metal tire rack as well as a number of automobile and truck tires were thrown off the truck at the rear of the station wagon. Turner was fatally injured and Hall and Webb suffered bodily injuries from the falling tires and tire rack.

Mrs. Bartlett testified that the lights of the station wagon were burning the entire time it was stopped on the highway. Hall stated positively that they were burning when he arrived and that they remained on up until the time of the accident. Sheriff McConnell testified that when he arrived the lights "were burning". Webb had no recollection about the lights. Jerry Bowyer said that as he left his service station he looked down the highway and did not see the Bartlett vehicle or any headlights burning except those on complainant's truck. Walters stated that as he was approaching the scene he did not see "any lights at all" on the station wagon.

Defendant makes five asignments of error. In substance, she contends that the court erred (1) in refusing to strike complainant's evidence; (2) in granting and in refusing to grant certain instructions; (3) in admitting certain evidence, and (4) in refusing to set aside the verdict as being contrary to the law and the evidence.

Code, § 8-627 provides for contribution among wrongdoers for

mere acts of negligence not involving moral turpitude. However, before contribution may be had it is essential that a cause of action by the person injured lie against the alleged wrongdoer from whom contribution is sought. Further, this right arises only when one tort-feasor has paid or settled a claim for which other wrongdoers are also liable. See *Nationwide Mutual Insurance Co.* v. *Jewel Tea Company, Incorporated,* 202 Va. 527, 532, 118 S.E. 2d 646, 649.

In the case at bar, complainant was required to establish by proof that the claimants Webb, Hall and the administrator of Turner's estate were entitled to recover against Mrs. Bartlett, the defendant. It follows that if the three claimants with whom complainant made settlement could not have recovered, as a matter of law, from defendant under the evidence adduced, then it was error for the court to overrule defendant's motion to strike complainant's evidence made at the conclusion of all of the evidence.

Complainant argues, among other things, that defendant was negligent in permitting her vehicle to stop and to remain parked on the hard surface portion of the highway when there was ample space for parking it on the shoulder, and that she did not take all reasonable steps to remove it from the roadway to the shoulder as soon as possible as required by Code, § 46.1-248. Further, it contends that the evidence was sufficient for the jury to determine that Mrs. Bartlett was guilty of negligence which was a proximate cause of the death and injuries resulting from the accident.

On the other hand, defendant takes the position that she was not guilty of any actionable negligence as to the three claimants; that her negligence, if any, was not a proximate cause of the claimants' injuries and death, but that the negligence of complainant's truck driver was the sole proximate cause of such injuries and death.

"It is well settled that to constitute actionable negligence there must be a legal duty, a breach thereof and a consequent injury which could have been reasonably foreseen by the exercise of reasonable care and prudence, and where there is no breach or violation of a legal duty to take care for the safety of the person or property of another there can be no actionable negligence." (Citing authorities.) *Atlantic Company* v. *Morrisette,* 198 Va. 332, 333, 94 S.E. 2d 220, 221, 222.

As has been noted we are only concerned here with actionable negligence on the part of Mrs. Bartlett relating to the three claimants. The evidence shows that her vehicle "conked out" either from lack of gasoline or from a mechanical failure in the westbound lane of

Route 11, and that she promptly sent to Bowyer's Esso Station, located a short distance away, for assistance before the three claimants arrived at the scene.

The claimants left their cars parked beyond the disabled Bartlett station wagon and voluntarily returned for the purpose of pushing the station wagon off the highway onto the shoulder. The evidence is uncontradicted that Mrs. Bartlett did not request any of the claimants to push her car. When they offered to help, she told them that she had sent to Bowyer's for assistance and that she thought he would be there any minute. In standing behind the car, Hall admitted that he voluntarily "assumed this risk". The claimants told her to get in the car and they would push it. Before attempting to enter the vehicle Mrs. Bartlett said she looked both ways and "there was nothing in sight." Then she observed Bowyer's truck leaving the service station and turned toward the claimants, who were behind her station wagon, and shouted to them that Bowyer was coming. At that instant the tires started falling from complainant's truck. She said: "[I]t happened so fast that I had no time for warning."

Assuming Mrs. Bartlett was negligent in stopping her station wagon on the highway, the claimants were fully aware of the situation that existed before they voluntarily undertook to push the vehicle. They had at least as good an opportunity to observe the approaching truck from their rear as did Mrs. Bartlett. The evidence does not show that Mrs. Bartlett breached any duty owed the claimants, and under the particular facts of this case we find, as a matter of law, that she was not guilty of actionable negligence as far as claimants are concerned. Thus, the trial court erred in refusing to strike complainant's evidence.

Having reached this conclusion, it becomes unnecessary to discuss the other errors assigned.

Accordingly, the jury verdict is set aside, the judgment reversed and final judgment is here entered for defendant.

*Reversed and final judgment.*