## CIRCUIT COURT OF THE CITY OF NORFOLK

Chesapeake & Potomac Telephone
Co. of Virginia

v.

Valjar, Inc.,
and William E. Sams

September 30, 1988

Case No. (Law) L-86-2719

By JUDGE LYDIA CALVERT TAYLOR

This matter came to be heard by the court on April 12, 1988, on an amended motion for judgment by Chesapeake and Potomac Telephone Company (C & P) against Valjar, Incorporated (Valjar) and William E. Sams (Sams) asking damages for injury done to the telephone lines of C & P that were buried under a site owned by Mr. Sams and where Mr. Sams was doing work using an employee and truck of Valjar's. Additionally, cross-claims by Sams against Valjar and Valjar against Sams were also heard. The court gave judgment for the plaintiff against Valjar for $336.22 and against Sams for $2,574.17. The court found specifically that Valjar's employee (the driver of the truck) was a borrowed employee lent to Sams by Valjar. Therefore, the court, as to the principal amount of damage, accepted Valjar's defense that Valjar, which was under contract with Sams at the time of the incident when the underground cables of C & P were damaged, was a loaned servant acting under the direction and control of Sams.

Before the court could rule further on the cross-claims, both Valjar's and Sams's counsel argued the case and Sams's counsel asked time to submit authority as to why Sams should be entitled to contribution or indemnifi-

cation against Valjar. It should be noted, however, that Sams in his cross-claim only asked for contribution under Section 8.01-34 of the Virginia Code; he did not sue for indemnification against Valjar.

After the court had taken the matter under advisement awaiting briefs, it received a letter from Mrs. ReDavid-Rack, counsel for Valjar, stating that Valjar had abandoned its claim for contribution [or] indemnification against Sams and assumed that Sams had also abandoned its cross-claim. However, in a letter written on the same date as Mrs. ReDavid-Rack's letter, which letters crossed in the mail, Palmer Rutherford, counsel for Sams, submitted a letter arguing that Sams should be entitled to judgment against Valjar on its cross-claim for contribution, that is, one-half of the judgment rendered against Sams. In her response of May 17th, Mrs. ReDavid-Rack argued against that motion by Sams, but did not renew Valjar's cross-claim for contribution against Sams. Therefore, the court assumes that Valjar has continued to abandon its claim for contribution against Sams and will not deal with that matter.

After reading letters from both counsel, as well as the cases cited by counsel for Valjar and further research on its own, the court is of the opinion that the cross-claim by Sams against Valjar for contribution under § 8.01-34 of the Virginia Code should be denied and judgment entered on that cross-claim for Valjar.

In the case of *Norfolk Southern v. Gretakis*, 162 Va. 597, 600 (1934), the court stated the circumstances under which a party was entitled to contribution under the predecessor statute to § 8.01-34 of the Virginia Code, under which present statute Sams seeks contribution. The court stated that only where a person who has been injured has a right of action against two persons for the same indivisible injury is there a right of contribution under the Virginia statute. Although the concurring negligence of two persons may have resulted in a indivisible injury to a third person, the court elaborated, if the third person only had a cause of action against one of the two parties sought to be held responsible, the one against whom the cause of action is enforceable cannot collect contribution from the other party, against whom the injured party did not have a cause of action. The

facts in the case were that Gretakis's infant son was injured in a motor vehicle accident allegedly due to the concurring negligence of the railroad and Gretakis himself. The infant son filed suit only against the railroad and recovered judgment. The railroad then filed suit seeking contribution from Gretakis, which contribution the Supreme Court denied. The court explained that, because the infant son of Gretakis was an unemancipated minor child, he could have no cause of action against his father under existing Virginia law at the time. Because the injured party could not recover against the second tort feasor, the railroad had no right of contribution as against Gretakis, the second tortfeasor.

The same was true in *Vepco v. Wilson*, 221 Va. 979 (1981), where the court held that because the injured party had no cause of action against Wilson, Vepco had no right to contribution from Wilson for damages that it had paid out to the injured party. *Id.* at 982. The court in *Vepco* explained that, before contribution will be permitted, a right of action must exist as to the joint tortfeasor against whom contribution is sought. See *id.* at 981. See also *Bartlett v. Robert Recapping, Inc.*, 207 Va. 789, 792-93 (1967). In *Vepco* the facts were as follows: two employees of Wilson had sued the City of Newport News, Vepco and Wilson in three separate motions for judgment. Wilson was dismissed as a defendant because the employees worked for Wilson and had received workmen's compensation from him. Vepco, fearing that the plaintiffs would recover against it, filed a third-party motion against Wilson asking contribution [or] indemnification in the event Vepco were held liable. Wilson's special plea to Vepco's third-party action was sustained because, as the court ruled, it is essential for contribution that a cause of action by the person injured lie against the alleged wrong-doer. Because here the two employees of Wilson had no cause of action against Wilson, there could be no contribution sought against Wilson by Vepco. This was true, even though Vepco alleged that Wilson was primarily liable because it had been actively negligent, whereas Vepco had only passively been negligent and was, therefore, secondarily liable. *Id.* at 981-82.

The question then becomes: Did C & P have a cause of action against Valjar? That question has been determined

by this court in the principal action when it made a factual finding that Sams had exercised ultimate control and direction over the driver of Valjar's crawler, making Sams responsible for the injuries to C & P because the driver of the crawler had become Sam's borrowed servant. Under Virginia law, if the court finds that there was control exercised by the borrowing employer, the injured party can only collect from that borrowing employer, and may not collect from the lending employer. In *Tidewater Stevedoring Corp. v. McCormack*, 189 Va. 158 (1949), plaintiff, McCormack, was an employee of a company that contracted with defendant Tidewater Stevedoring to repair equipment used in loading ships. When plaintiff was injured, he sued defendant Tidewater Stevedoring. The trial court determined that, based on the facts in *McCormack*, plaintiff McCormack was not Tidewater's employee since Tidewater did not control McCormack's actions. Thus, Tidewater was not liable to McCormack for his injuries. In so holding the Virginia Supreme Court cited the Supreme Court holding in *Standard Oil Company v. Anderson*, 212 U.S. 215 (1909). The court in *McCormack* adopted the reasoning of the United States Supreme Court in *Anderson*, that, where an employer borrows an employee from another company and the employees are under the employer's exclusive control, the employees become that borrowing employer's servants and, therefore, the borrowing employer becomes responsible for those employees' negligence. However, the court stated in *McCormack*, if the lending employer retains direction and control over the employees, then the lending employer is responsible for the negligence of their conduct because, although the work is done for the ultimate benefit of another, it is still, in its doing, the lending employer's own work. *Id*. at 168. Thus, McCormack had no cause of action against Tidewater because Tidewater had not made McCormack its servant by exercising control and dominion over him. His only cause of action, therefore, lay against the lending employer, which maintained direction and control over him.

In *Coker v. Gunter*, 191 Va. 747 (1951), the plaintiff was held to have continued to be the employee of the lending employer. *Id*. at 750. Therefore, although plaintiff was injured when driving in a truck owned by the defendant, and claimed that the driver, his fellow employee, was

a borrowed servant of the defendant at the time of the accident, the court stated that the driver was not the servant of the defendant but rather that the plaintiff and the driver continued to be fellow servants of the lending employer, the pipe line company. *Id.* at 754-55. As the court stated in *Coker*, the question of ultimate liability turns on whose employee the plaintiff was at the time of the accident. *Id.* at 757.

Thus, it is clear from the Virginia cases that if the employee is construed by the court to be a "borrowed servant" of the borrowing employer, he has no cause of action against the lending employer. Here the court found that the driver of the crawler had become a borrowed servant of Sams. Therefore, the injured party--here, C & P--had no cause of action against the lending employer, because, by not directing and ultimately controlling the actions of its driver, the lending employer is not held responsible for that employee's actions. Therefore, because C & P had no cause of action against Valjar for the damage incurred because of the negligence of its employee when acting under the direction and control of the borrowing employer, Sams, as the ultimately responsible party, cannot collect contribution from Valjar. Sam's right of contribution against Valjar can rise no higher than the right of C & P to collect from Valjar. Because this court has found that C & P could not collect for $2,574.17 for injuries caused by the crawler driver under Sam's direction, Sams cannot get contribution from Valjar for those injuries.

Judgment, therefore, will be entered on the cross-claim of Sams against Valjar for cross-defendant Valjar.